# Kaull Milling Company, Appellant, v. Pennsylvania Railroad Company.

*Carriers— Railroads— Freight— Delivery— Shipment   to   "notify party"—Diversion.*

In an action of assumpsit for failure to deliver two carloads of flour, the evidence established that the cars were consigned to the order of the consignor "Destination Altoona, Pa. For diversion. Notify R. E. McCosh and Company, Philadelphia." It also appeared that McCosh and Company were the duly authorized mill representatives for the consignor in Philadelphia, and had ordered the diversion of the cars from Altoona to Philadelphia. The defendant company made diversion in strict accordance with orders given by McCosh and Company.

*Held:* That in giving these orders the latter acted as the plaintiffs' agents, and within the scope of their authority. If the plaintiff suffered any damages they were occasioned solely by the acts of its own agents and representatives, and did not flow from a breach of defendant's contract to safely carry and properly deliver the merchandise accepted by it.

Under such circumstances, judgment was properly entered for the defendant.

Argued October 28, 1926.   Appeals Nos. 279, 280, 281 and 282, October T., 1926, by plaintiff from judgment of C. P. No. 4, Philadelphia County, September T., 1922, No. 5989, in the case of Kaull Milling Company, a corporation to the use of Kansas City Milling Company a corporation v. Pennsylvania Railroad Company.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Assumpsit against common carrier for failure to deliver merchandise.   Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $5,091.62.   Subsequently the Court on motion entered judgment in favor of the defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned,* among others, was the judgment of the Court.

*James J. O'Brien,* and with him *Fox and Rothchild,* for appellant.

*Francis B. Biddle* of *Barnes, Biddle & Morris,* and with him *Charles Myers,* for appellee.

OPINION BY KELLER, J., March 3, 1927:

Plaintiff brought an action of assumpsit against defendant, a common carrier, to recover damages for a breach of its contract to safely carry and properly deliver within a reasonable time two carloads of flour,— the breach assigned being the unauthorized diversion of the cars from Altoona, Pa., to Philadelphia, Pa. Counsel for each party requested binding instructions. The court below directed a verdict in favor of the plaintiff for damages to the amount of $875, being the equivalent of the decline in the market value of the flour between the dates of its arrival at Altoona and its sale at Philadelphia, together with interest in the sum of $231. Subsequently the court granted defendant's motion for judgment non obstante and plaintiff appealed. This action was based upon the alleged unauthorized diversion of cars PM40079 and IC39517, each containing two hundred and fifty barrels of flour. Three similar cases based upon the alleged diversion of four additional cars containing in the aggregate fifteen hundred barrels of flour were brought at the same time to Nos. 5990, 5991 and 5992, September T., 1922, in the court below. The four cases were tried together and a verdict directed in each case in favor of the plaintiff and in each case the court below subsequently entered judgment for the defendant non obstante. Appeals were taken by plaintiff in all the cases to Nos. 279, 280, 281 and 282, October T., 1926, of this court and were argued together. Substantially the same questions are involved in each case. The assignments of error are confined to the entering of judg-. ment for defendant n. o. v. and the conclusions of law

stated by the court below in its opinion entering that judgment. As we understand this record and the oral arguments of counsel it is agreed that there were no issues of fact for the jury and that the case is to be determined therefore entirely as a question of law. This opinion is based upon the facts disclosed by the evidence adduced at No. 5989, September T., 1922, of the court below applying to the shipments in the above mentioned cars, PM40079 and IC39517. These material facts are: The Kaull Milling Company, legal plaintiff below and appellant here, is a manufacturer of flour at Kansas City, Mo. By an instrument in writing dated June 24, 1920, it constituted R. E. McCosh and Company, of Philadelphia, its "direct mill representatives" for Eastern Pennsylvania, all of Delaware and Maryland, and certain portions of New Jersey and other States. In this paper plaintiff agreed to supply McCosh and Company with plaintiff's "regular contract book, samples, and other necessary supplies." The agreement provides for sales of flour, at prices as quoted by plaintiff by wire from time to time, to McCosh and Company for their own account and also for sales by them to buyers for plaintiff's account, subject to final confirmation by plaintiff. In the third paragraph of the agreement plaintiff said "It is agreed that we are to allow you a commission of fifteen (15¢) cents per barrel on all flour shipped by us to you or to other parties whom you might sell for our account within the territory described." On November 8, 1920, plaintiff shipped over the Chicago, Milwaukee and St. Paul Railroad, defendant's connecting carrier, the above mentioned five hundred barrels of flour in the cars specified, taking an order, or negotiable, bill of lading in the standard form for each car. The merchandise was consigned by Kaull Milling Company as the consignor to "Order of Kaull Milling Company" as consignee, "Destination Altoona,

. State of Pa. (For Diversion). Notify R. E. McCosh and Company,—Philadelphia, Pa.'' Plaintiff attached the bills of lading to sight drafts for the price of the flour, plus freight, et cetera, drawn upon R. E. McCosh and Company, and had them forwarded to a Philadelphia bank for collection. The cars arrived at Altoona on November 23, 1920. In the meantime R. E. McCosh and Company had written plaintiff from Philadelphia, under date of November 11, 1920, informing it that there would be a number of prosecutions ''on account of bleached flour being shipped into Pennsylvania'' et cetera, and saying ''We of course are offering and selling your flour here under the assumption that your flour is not bleached.''

Prior to the arrival of the cars at Altoona, namely, on November 17, 1920, R. E. McCosh and Company gave defendant a ''Consignee's Order for Reconsigning Car-Load Freight,'' identifying the cars by initials and numbers and directing defendant to reconsign them from Altoona to Philadelphia ''Notify R. E. McCosh and Co.'' and indemnifying defendant in the event of failure on their part to surrender properly endorsed bills of lading at the new destination. Upon the arrival of the cars at Philadelphia on or about November 25, 1920, due notice of their arrival was given to R. E. McCosh and Company, and under date of November 27, 1920, defendant notified plaintiff from Altoona that the cars had arrived there on the 23rd and had been reconsigned to Philadelphia. McCosh and Company refused to pay the drafts to which the bills of lading were attached and rejected the flour upon the ground that it was adulterated within the meaning of the Act of May 13, 1909, P. L. 520, in that it had been bleached with nitrous acid and therefore could not be sold in Pennsylvania. Thereupon defendant unloaded car PM40079 on November 27th and car IC39517 on November 29, 1920, and placed the flour

in a warehouse.  About December 10, 1920, plaintiff's sales manager came to Philadelphia, lifted the drafts and bills of lading and, upon surrender of the bills of lading properly endorsed and the payment of charges, the flour was delivered to plaintiff.  On December 17th it was sold for use in New Jersey at the best price obtainable, which was approximately $2 per barrel lower than its market value on November 23rd, the date of arrival at Altoona.  A chemical analysis made December 6, 1920, at the instance of McCosh and Company of samples of the flour unloaded from each car disclosed that it had been bleached with nitrous oxid. Similar analyses made of the flour shipped in the other four cars disclosed that of the six cars shipped four contained bleached flour and two unbleached.  Under the view we take of this case the first and, indeed, a controlling question is whether defendant was justified, under all the facts disclosed by the evidence, in diverting the cars from Altoona to Philadelphia.  If it was, several of the questions referred to by the learned trial judge in his opinion and discussed at length in the briefs need not be considered.  For instance, the questions whether the flour had any market value in this state, in view of its alleged adulteration, and whether the reasons given by McCosh and Company for refusing to pay the drafts and accept the flour were valid or invalid become immaterial.  The action was not based upon a misdelivery or a conversion but was assumpsit for the damages arising out of an alleged breach of defendant's contract under the bills of lading that it would safely carry and properly deliver the flour within a reasonable time from its receipt.  The breach pleaded is that upon arrival of the cars at Altoona defendant, without authority from and without the knowledge or consent of plaintiff or the holder of the bills of lading caused the cars to be taken to Philadelphia, or, in other words, was guilty of an

unauthorized diversion. As there was a decline in the market value of the flour of approximately $2 per barrel between the date of its arrival at Altoona and its sale at Philadelphia, plaintiff alleged that it suffered damages to that extent by reason of the diversion. The only act charged against the defendant as creating a liability on its part to plaintiff is that it diverted the cars without sufficient authorization. The bills of lading were negotiable, or order, bills in the standard form approved by the Interstate Commerce Commission and plaintiff shipped to its own order, the destination being Altoona, but expressly for diversion. The party to be notified was R. E. McCosh and Company of Philadelphia. The legal effect upon the rights of the parties of the placing of such direction on order bills has been well established. In and of itself it does not ordinarily authorize the carrier to make delivery to the person so to be notified without the production of the bills of lading properly endorsed, or without being otherwise directed by the shipper so to do, because, as expressly stated on the face of the bills and as provided by section nine of the Federal Bills of Lading Act of August 29, 1916, Chap. 415, 39 Stat. L. 538; 8 U. S. Compiled Statutes 1916, 9313, delivery is to be made only to a person in possession of the order bill of lading properly endorsed. It is the practice generally resorted to by a vendor who, while consigning goods to himself or to his own order, wishes at the same time to have the vendee notified of their arrival so that he may be afforded an opportunity of receiving them on payment of the draft drawn on him and the surrender of the bill of lading thereto attached: 4 R. C. L., Section 294. On the question however of the general duty of the carrier to give notice to the consignee of the arrival of goods before its liability as a common carrier can terminate, the placing of such direction on a bill of lading has an

important bearing.  The giving of the notice of arrival to such third person, when the goods have been consigned with instructions to notify him, is a sufficient performance of this duty: 4 R. C. L., Section 222. If therefore the diversion was proper the defendant was justified, after having given notice of its arrival to McCosh and Company, in placing the flour in a warehouse subject to the order of the plaintiff, upon the refusal of McCosh and Company to take up the drafts and thus procure the bills.  We turn then to the consideration of the question whether defendant was justified in diverting the cars from Altoona to Philadelphia.  Delivery must be made at a proper place and when the bill of lading stipulates distinctly as to the place of delivery it will of course control, or when definite instructions with respect to the place of delivery are given to the carrier by the consignor, or his duly authorized agent, they are to be obeyed. "Although a carrier, where he has agreed to deliver goods at a particular place, can ordinarily discharge himself of the obligation thus assumed only by an exact performance thereof, this does not mean that the destination of the goods is not subject to change at the will of the other parties concerned": 4 R. C. L., Section 287.  It is clear that this plaintiff never intended that delivery of these cars should be made to any one at Altoona.  It is expressly noted on the bills of lading that they were being shipped to Altoona "for diversion."  As stated by plaintiff's sales manager in his testimony, Altoona was merely a diversion point for flour and plaintiff never sold it there.  At another place in his testimony he said "Altoona is merely a way station, a flag station, for flour trains going east." This witness also testified: "Flour is sold on a rate basis, and the shipper or buyer has the privilege of diverting it, the same as any other shipment ...... Q. ..... That shipment was made by you to be diverted

from Altoona elsewhere, was it not? A. Under our buyer's request, yes." The buyer here was McCosh and Company and they were the "notify party" under the bills of lading, but they were not merely ordinary vendees to whom notice of arrival was to be given in order that they might pay the drafts and obtain the bills. We have already referred to the material provisions of the agreement constituting McCosh and Company the direct mill representative of plaintiff. Moreover, plaintiff's sales manager testified that McCosh and Company were plaintiff's "brokers and representatives in the Philadelphia market," and, although denying that Mr. McCosh acted as plaintiff's agent in the east, admitted on cross-examination that he acted as plaintiff's "representative and shipper ...... representative of shipments ...... on sales of flour ...... to him or to other people." We think it is quite obvious, under all the circumstances appearing from the evidence, that plaintiff intended in contracting with the initial carrier for this shipment that the cars were to be diverted at Altoona to whatever point McCosh and Company, acting as plaintiff's "representative and shipper," might designate. The diversion was made in strict accordance with the reconsignment orders given defendant by McCosh and Company and we are of opinion that in giving these orders they acted as plaintiff's agents and within the scope of their authority. If plaintiff suffered any damages they were occasioned solely by the acts of its own agents and representatives and did not flow from a breach of defendant's contract to safely carry and properly deliver the merchandise accepted by it. It follows that judgment was properly entered for defendant.

The assignments of error are overruled and the judgment is affirmed.

Similar judgments were entered in appeals Nos. 280, 281, 282, October Term 1926.